840 A.2d 183

**Richard L. MASSEY, Jr.**

v.

**Jon P. GALLEY.**

**No. 2147, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Dec. 30, 2003.

438

Richard L. Massey, Jr., for Appellant.

Karl A. Pothier (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellee.

Panel HOLLANDER, KRAUSER, and GREENE, JJ.

KRAUSER, J.

Appellant, Richard L. Massey, Jr., an inmate in the custody of the Division of Correction ("DOC") of the Department of Public Safety and Correctional Services, filed a pro se "Complaint Under [the] Public Information Act and Request For Expedited Hearing" in the Circuit Court for Allegany County. The complaint alleged that the warden of Massey's facility, appellee, Jon P. Galley, failed to respond to a number of Massey's Maryland Public Information Act[1] requests to inspect certain documents purportedly in the possession of the DOC. In response, Warden Galley moved to dismiss Massey's complaint on the grounds that Massey had failed to exhaust his administrative remedies before filing suit in the circuit court.

Granting that motion on the grounds advanced by Warden Galley, the circuit court dismissed Massey's complaint. From that dismissal, Massey noted this pro se appeal. He presents

---

1. Md.Code (1984, 1999 Repl.Vol. & Supp.2003), §§ 10–611 through 10–628 of the State Government Article.

for our review the following issues, which are set forth below as they appear in his brief:

I. Whether the provisions of Md.Code (1984, 1999 Repl. Vol.), § 10–622(c) of the State Government Article, which explicitly renders administrative review as to Maryland Public Information Act disputes optional, is not available to prisoners.

II. Whether a state prisoner is required to pursue administrative remedies that are unavailable or inadequate.

For the reasons that follow, we shall affirm the judgment of the circuit court.

## FACTS

Massey is an inmate at the Western Correctional Institution ("WCI") in Cumberland, Maryland. He submitted four separate requests to Warden Galley to produce for inspection certain documents pursuant to the Maryland Public Information Act, ("MPIA") Md.Code (1984, 1999 Repl.Vol. & Supp. 2003), §§ 10–611 through 10–628 of the State Government Article ("SG"). Those documents included: (1) "[t]he contract between the State of Maryland and Prison Health Services, Inc. (PHS) which is currently effective and applies to provisions of medical care at WCI;" (2) "[a]ny and all records of lawful authorization for the WCI commissary to charge inmates any amount beyond costs of items sold, including specification(s) of any percentage/amount allowable;" (3) "[a]ny and all records ... pertaining to the use of photocopier machines for/by inmates;" and (4) "[a]ny and all financial records ... pertaining to the photocopier cards sold by the WCI commissary."

When Warden Galley did not respond to these requests, Massey filed a complaint in the Circuit Court for Allegany County, claiming that Warden Galley, by not responding to Massey's requests, "constructively denied [him] inspection of the requested records." Accordingly, his complaint sought "an expedited hearing, declaratory and injunctive relief, costs, and damages for [Warden Galley's] violation of the Maryland

Public Information Act," and requested that the court "[f]ind [Warden Galley] guilty of a misdemeanor and consider imposing a fine of up to $1000. . . ."

Warden Galley moved to dismiss Massey's complaint on the grounds that the court lacked subject matter jurisdiction over this claim because Massey had failed to exhaust his administrative remedies under the Prisoner Litigation Act ("PLA"), Md.Code (1973, 2002 Repl.Vol.), §§ 5–1001 through 5–1007 of the Courts and Judicial Proceedings Article ("CJP"), and Md.Code (1999), §§ 10–201 through 10–210 of the Correctional Services Article ("CSA") (governing the Inmate Grievance Office). When Massey's complaint was dismissed, this pro se appeal followed.

## STANDARD OF REVIEW

"The proper standard for reviewing the grant of a motion to dismiss is whether the trial court was legally correct. In reviewing the grant of a motion to dismiss, we must determine whether the complaint, on its face, discloses a legally sufficient cause of action." *Fioretti v. Md. State Bd. of Dental Exam'rs*, 351 Md. 66, 71–72, 716 A.2d 258 (1998) (citations omitted). In doing so, we must "presume the truth of all well-pleaded facts in the complaint, along with any reasonable inferences derived therefrom." *Id.* at 72, 716 A.2d 258; *see also Bennett Heating & Air Conditioning, Inc. v. NationsBank of Md.*, 342 Md. 169, 174, 674 A.2d 534 (1996); *Faya v. Almaraz*, 329 Md. 435, 443, 620 A.2d 327 (1993); *Berman v. Karvounis*, 308 Md. 259, 264–65, 518 A.2d 726 (1987). "Dismissal is proper only if the facts and allegations, so viewed, would nevertheless fail to afford plaintiff relief if proven." *Faya*, 329 Md. at 443, 620 A.2d 327; *see also Bobo v. State*, 346 Md. 706, 709, 697 A.2d 1371 (1997).

## DISCUSSION

### I

Massey contends that the court erred in granting Warden Galley's motion to dismiss because the MPIA does not require prisoners to exhaust administrative remedies.

The MPIA declares that "[a]ll persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees." SG § 10–612(a); *see also Office of the Attorney Gen. v. Gallagher*, 359 Md. 341, 343, 753 A.2d 1036 (2000); *Office of the State Prosecutor v. Judicial Watch, Inc.*, 356 Md. 118, 134, 737 A.2d 592 (1999). It provides that "a custodian shall permit a person or governmental unit to inspect any public record at any reasonable time." SG § 10–613(a).

If a person wishes to inspect a public record, he or she must submit a written application to the custodian of the record. *Id.* § 10–614(a). Depending on the type of information sought in the public records, the custodian of the record may deny the person requesting the information access to those records. *Id.* §§ 10–615 to 10–618. If access is denied, the person making the request has a right to seek administrative review of that denial. *Id.* § 10–622(b). But, as Massey correctly points out, the MPIA expressly provides that a person does not need to exhaust administrative remedies under the MPIA before filing suit in the circuit court. SG § 10–622(c).

Warden Galley does not contend otherwise. Rather, he maintains that Massey's claim falls under the PLA, not the MPIA, and that the PLA required Massey to exhaust his administrative remedies before filing suit. The PLA creates a statutory scheme for civil actions brought by prisoners. It applies to all "civil actions," that is to say, "legal action[s] seeking money damages, injunctive relief, declaratory relief, or any appeal filed in any court in the State that relates to or involves a prisoner's conditions of confinement." CJP § 5–1001(c)(1). Under the PLA, as Warden Galley points out, "[a] prisoner may not maintain a civil action until the prisoner has fully exhausted all administrative remedies for resolving the complaint or grievance." CJP § 5–1003(a). Indeed, that Act requires that a "prisoner ... attach to the initial complaint proof that administrative remedies have been exhausted." *Id.* § 5–1003(b)(1).

Under the PLA, "administrative remedy" is defined as "any procedure for review of a prisoner's complaint or grievance, including judicial review, if available, that is provided by the Department [of Public Safety and Correctional Services or] the Division of Correction. . . ." CJP §§ 5–1001(b)(1) and (2). The administrative remedy process is conducted by the Inmate Grievance Office (IGO). *See* CSA §§ 10–201 through 10–210. The IGO has broad jurisdiction over inmate complaints against DOC officials and employees:

[I]f an individual confined in a correctional facility in the [DOC] has a grievance against an official or employee of the [DOC], the individual may submit a complaint to the [IGO] within the time and in the manner required by regulations adopted by the [IGO].

CSA § 10–206(a). The Department of Public Safety and Correctional Services defines a "grievance" as an action "arising from the circumstances of custody or confinement." COMAR 12.07.01.02B.(7). Furthermore, "[a] court may not consider an individual's grievance that is within the jurisdiction of the [IGO] unless the individual has exhausted the remedies provided [by the IGO]." CSA § 10–210(a); *see also* CJP § 5–1003(b).

■ In this case, Massey, an inmate, has a grievance against Warden Galley, an official of the DOC. Moreover, he seeks to inspect documents that relate to the conditions of his confinement, including documents pertaining to WCI's health services, commissary, and photocopiers. His claim therefore falls within the purview of the PLA, *see* CJP § 5–1001(c)(1), and is a "grievance" that lies within the jurisdiction of the IGO. *See* CSA § 10–206(a); COMAR 12.07.01.02B.(7). Consequently, under the PLA and the relevant provisions of the CSA, Massey was required to first exhaust administrative remedies before filing suit in the circuit court. CJP § 5–1003(b); CSA § 10–210(a). That, Massey admits, he did not do. In fact, he maintains in his complaint that he was not required to do so.

Seeking a way around the PLA's exhaustion of remedies requirement, Massey contends that "[s]ince [he] exercised his right to file a complaint pursuant to [the MPIA] and the pertinent administrative regulation, [his] complaint [is] not within the jurisdiction of the IGO and, therefore, did not need to be exhausted therein." In other words, he maintains that he had a right to proceed under either statute and he chose the more liberal of the statutes—the MPIA.

 This argument is without merit. It is well settled that

> [w]here the statute to be construed is a part of a statutory scheme, the legislative intention is to be discerned by considering it in light of the statutory scheme. When, in that scheme, two statutes, enacted at different times and not referring to each other, address the same subject, they must be read together, *i.e.*, interpreted with reference to one another, and harmonized, to the extent possible, both with each other and with other provisions of the statutory scheme. Neither statute should be read, however, so as to render the other, or any portion of it, meaningless, surplusage, superfluous, or nugatory. In attempting to harmonize them, we presume that, when the Legislature enacted the later of the two statutes, it was aware of the one earlier enacted.

*Gov't Employees Ins. Co. v. Ins. Comm'r*, 332 Md. 124, 131–32, 630 A.2d 713 (1993) (citations omitted) [hereinafter *"GEICO "*]. Furthermore, "[w]here provisions of one of the statutes deal with the common subject generally and those of the other do so more specifically, the statutes may be harmonized by viewing the more specific statute as an exception to the more general one." *Id.* at 132–33, 630 A.2d 713.

 The MPIA was originally enacted in 1970 and was modeled after the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1996 & Supp.2003). *Prince George's County v. Wash. Post Co.*, 149 Md.App. 289, 305, 815 A.2d 859 (2003). The PLA was enacted twenty-seven years later. 1997 Md. Laws, Chap. 495. As the MPIA applies in

general to all persons and the more-recently enacted PLA applies specifically to prisoners, we must "harmonize" the two statutes, as the Court of Appeals instructed in *GEICO,* by "viewing the more specific statute [the PLA] as an exception to the more general one [the MPIA]." *See GEICO,* 332 Md. at 133, 630 A.2d 713. Having done so, we conclude that the PLA, not the MPIA, controls the resolution of prisoners' claims, such as Massey's. And therefore we hold that the circuit court properly dismissed Massey's complaint because he failed to exhaust his administrative remedies, under the PLA, before filing his complaint in the circuit court.

## II

Massey further contends that "no administrative remedy was available to him, and nothing in the relevant [Correctional Services or Courts and Judicial Proceedings Articles] requires a prisoner to pursue an administrative remedy which is un-available." In support of this contention, Massey advances two arguments.

First, he argues that he has "previously submitted [administrative] complaints regarding MPIA request denials and discovered that the DOC refuses to accept them." This is apparently a reference to several complaints he submitted through the DOC's Administrative Remedy Procedure ("ARP"). ARP is a preliminary administrative remedy estab-lished by the DOC that must be exhausted before an inmate may file a complaint with the IGO. *See* CSA § 10–206(b). The DOC responded to Massey's ARP complaints by properly informing him that his MPIA requests should have been sent to the Office of the Commissioner of the DOC and suggesting that he send any future requests there. Accordingly, this argument is without merit.

Second, Massey argues that it is impossible for him to exhaust his administrative remedies under the PLA and re-quest an optional administrative hearing under the MPIA within thirty days of the denial, as required by law. *See* COMAR 12.11.02.11.A. But Massey is not required to exhaust

446

the optional administrative remedy of the MPIA. Rather, he is required to exhaust his administrative remedies under the PLA before filing suit in the circuit court. *See* CJP § 5–1003(a); *see also* CSA § 10–210(a). Accordingly, this argument is also without merit.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**